**STATE of Minnesota, Respondent,**

v.

**Emanuel Galley
AHIAGBEDE, Appellant.**

**No. CX–85–2275.**

Court of Appeals of Minnesota.

Oct. 7, 1986.

Hubert H. Humphrey, III, Atty. Gen. St. Paul, Thomas L. Johnson, Hennepin Co. Atty., J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

Alan G. Jontz, Minneapolis, for appellant.

Considered and decided by NIEREN-GARTEN, P.J., and WOZNIAK and SEDG-WICK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Emanuel Ahiagbede appeals his convictions for first and second degree intrafamilial sexual abuse under Minn.Stat. §§ 609.-3641, subd. 1(1) and 609.3642, subd. 1(2)(e) (1984), claiming the evidence was insufficient to support the jury verdict. We affirm.

## FACTS

Appellant was charged with having sexual contact with R.C., his 13 year-old step-daughter, from January 28, 1984 to May 6, 1984 and engaging in an act of sexual penetration on May 6, 1984.

At trial, R.C. testified that she first met appellant in November, 1983 just before he married her mother. In December, 1983 appellant began touching R.C. "around the breast area." She said he tried "to make me have sexual intercourse with him" in January, 1984 and he started coming into her bedroom at night and had intercourse with her "about six times."

R.C. specifically described an incident that took place at about 11:00 p.m. on May 6, 1984. R.C. said she and her two year-old brother were sleeping in her bed while their mother was at work. Appellant came in, climbed onto the bed, lifted R.C.'s night-gown, and took down her underpants. R.C. said appellant held her hands behind her head and "put his penis into my vagi-

na." She struggled and pulled away from appellant, who ejaculated onto the sheet. When her brother fell out of the bed during the struggle and started to cry, appellant got up and left.

On May 10th R.C. described the May 6th sexual assault to Sandra Beltram, a school social worker. Beltram testified that R.C. appeared "very nervous and she was shaking and she was crying and seemed to be very upset." Beltram said R.C. did not tell her mother what had happened because she "didn't know if her mother would believe her and she didn't want her mother to be angry with her." Beltram called Child Protection authorities and reported R.C.'s allegations. When R.C. came to school the next day, she had a black eye; R.C. told Beltram "her mother had hit her."

Beltram testified that:

* * * as a school social worker and my previous experience with abuse cases, the student and the child is usually afraid to tell the parent and afraid. They love the parents and don't want to hurt the parents and they don't know if it will be love or rejection once they tell what happened. I think [R.C.] was going through that too.

When asked about the reporting of child abuse in general, Beltram said she had never had an unsubstantiated case, and that when someone is shaking and crying "that definitely indicates there is a problem."

There was no objection to Beltram's testimony.

Dr. Paula Kelly, a pediatrician at Minneapolis Children's Medical Center, examined R.C. on May 18, 1984. According to Dr. Kelly, R.C. said she "had been the victim of repeated sexual intercourse by the mother's recent husband." R.C. also said she had been abused by her mother's previous boyfriend. Dr. Kelly found no direct evidence of trauma or semen, but stated that in her opinion, R.C. had a "larger opening vaginally" which was consistent with "entrance of a fairly large object." Dr. Kelly concluded that R.C.'s condition was "certainly consistent with someone who had

had prior sexual intercourse" but she could not determine when that intercourse took place. Dr. Kelly said her findings were "consistent with numerous acts."

Lt. Larry Strandlund, a member of the Minneapolis Police Department's Family Violence Division, took a taped statement from R.C. in which she described the fondling; said appellant had sexual intercourse with her on six occasions; and described the most recent assault on May 6th. R.C. also said she was afraid to tell her mother because she would be blamed for what had happened and might get spanked.

Sandra Ahiagbede, appellant's wife, testified for the defense. She said that when she found out about R.C.'s allegations, she "became very violent" with appellant; beat him; told him R.C.'s father would kill him; and asked him to leave.

Appellant testified that he is from Ghana in West Africa and came to the United States in 1982 to get an education. Appellant denied touching any part of R.C.'s body. When asked if he ever had sexual intercourse with R.C., appellant stated: "I have never ever had intercourse and there is no way I can ever get in to her." He said he left Minnesota because of threats from his wife and went to California and then Illinois. He returned to Minnesota in October 1984 and surrendered to authorities.

The jury found appellant guilty of both first and second degree intrafamilial sexual abuse. He received a presumptive sentence of imprisonment for concurrent terms of 54 and 24 months.

### ISSUE

Was the evidence sufficient to support the jury verdict?

### ANALYSIS

In reviewing the sufficiency of the evidence an appellate court is limited to determining

whether, given the facts in the record and the legitimate inferences that can be

drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence.

*State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978) (citations omitted); *see State v. Ulvinen,* 313 N.W.2d 425 (Minn.1981).

Appellant contends the evidence presented at trial was insufficient to support the verdict where the only evidence was the uncorroborated statements of R.C.

We must assume the jury believed R.C. when she described numerous acts of sexual contact and penetration perpetrated by appellant. *See Merrill* at 111. Her testimony alone established every element of the charged offenses. *See* Sections 609.3641, subd. 1(1) and 609.3642, subd. 1(2)(e). The law does not require corroboration of testimony by the victim of a sex offense.[1] *See State v. Ani,* 257 N.W.2d 699, 700 (Minn.1977). Where the testimony is conflicting, the jury is entitled to believe the complainant's version of the facts. *See State v. Heinzer,* 347 N.W.2d 535, 537 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. July 26, 1984).

Even so, the jury could have found corroboration of R.C.'s testimony in her prior consistent statements; the fact that she was visibly upset when she reported the offenses; and expert testimony that R.C.'s physiology was consistent with her allegations. Finally, the jury could have inferred from appellant's flight from the state that he had a "guilty mind."

## DECISION

Neither law nor fact support appellant's argument that there was insufficient evidence. We affirm.

1. Minn.Stat. § 609.347, subd. 1 (1984), does not apply here because that statute is limited to prosecutions under sections 609.342 to 609.346.